# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

TERRILL DEON BOYLES, #227540,

        Petitioner,

v.                           Case No. 2:06-CV-12207

JERRI ANN SHERRY,

        Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DENYING A CERTIFICATE OF APPEALABILITY

Petitioner Terrill Deon Boyles was convicted of first-degree premeditated murder,[1] first-degree felony murder,[2] two counts of armed robbery,[3] one count of conspiracy to commit armed robbery,[4] one count of assault with intent to commit murder,[5] one count of felonious assault,[6] and eight counts of possession of a firearm during the commission of a felony.[7] Petitioner was sentenced as an habitual offender[8] "to terms of life imprisonment without parole for each murder conviction, ten to twenty

---

[1] Mich. Comp. Laws § 750.316(1)(a)

[2] Mich. Comp. Laws § 750.316(1)(b)

[3] Mich. Comp. Laws § 750.529

[4] Mich. Comp. Laws § 750.157a

[5] Mich. Comp. Laws § 750.83

[6] Mich. Comp. Laws § 750.82

[7] Mich. Comp. Laws § 750.227b

[8] Mich. Comp. Laws § 769.12

years' imprisonment for the assault with intent to commit murder conviction, ten to twenty years' imprisonment each for the armed robbery and conspiracy convictions, five to fifteen years' imprisonment for the felonious assault conviction, and two years' imprisonment each for the felony-firearm convictions." *People v. Boyles,* No. 249502, 2004 WL 2889882, *1 (Mich. Ct. App. Dec. 14, 2004) (unpublished). Petitioner filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. He is currently incarcerated at Chippewa Correctional Facility in Kincheloe, Michigan, where Jerri Ann Sherry *was* the warden. The current warden at Chippewa Correctional Facility is Greg McQuiggan[9].

For the reasons stated below, the court will deny the petition.

## I. BACKGROUND

Petitioner's convictions arose from the robbery and execution of Kevin Stephens at his home on Kenilworth Street near downtown Pontiac, Michigan, on August 2, 2001 sometime between about midnight and 2:00 a.m. Petitioner and his co-defendant, Rashon Deon Daniels ("Daniels"), testified at trial that although they were at Stephens' home on the night of his murder, they left before he was shot and killed and that they had no connection with the other criminal activity that occurred there that night. (Trial Tr., 2/25/02 at 158-59, 163, 191, 192, 194). Several other witnesses present at the Kenilworth house attested differently.

The testimony of these others, taken as a whole, indicates that in the early-morning hours of August 2, 2001, there were several people including Petitioner in the

---

[9]Petitioner also spent some time at Newberry Correctional Facility, in Newberry, Michigan between the filing of this habeas petition and the present time.

Stephens home about midnight, possibly as early as 11:30 p.m., with the intense criminal action occurring most likely between about 1:00 and 2:00 a.m. Everyone there was apparently drinking alcohol and smoking marijuana. The combined testimony further showed that Petitioner and Daniels were acquaintances of Stephens and entered his home under apparently congenial circumstances, albeit to engage in crime – Petitioner arrived to purchase marijuana. They soon turned to the commission of a terroristic armed robbery in which the other visitors in the home were jostled, manhandled, and threatened, verbally and with weapons; Petitioner announced, for example, "everybody is about to die." Petitioner and Daniels demanded drugs and/or drug money, referring to it collectively as "the shit." After hitting and injuring some of the visitors in the home, taking property from some of the individuals, murdering Stephens and shooting Jerean Tidwell, Petitioner and Daniels fled the scene.

Corey Brown testified that: (1) Hayes answered the door when Petitioner arrived; (2) Petitioner knew Hayes and Stephens; Petitioner was greeted in a friendly manner; (3) Petitioner wanted to purchase some marijuana and Stephens went into a back room and came back with several "dime bags" of "weed;" (4) Petitioner purchased one of the bags and then requested if he could bring his friend in from the car so they could all smoke the "weed" in Stephens' home; (5) Stephens was amenable to that idea; (6) Brown then left Stephens' home, as his girlfriend, Kelli was waiting for him outside in a car; (7) Brown observed a teal colored compact car with chrome rims outside of Stephens' home; (8) Petitioner approached the car and Brown saw a second man (Daniels) emerge from the vehicle; those two returned to Stephens' home approximately 2:00 a.m. (Trial Tr., 2/25/02 at 231-39).

Kenneth Hayes testified that: (1) after Petitioner was initially let into Stephens' home, Petitioner left and then came back a few minutes later with Daniels; (2) during the robbery, Daniels took Hayes' cell phone and cash; (3) Petitioner and Daniels took from Stephens' home a VCR and some boxes; (4) Petitioner and Daniels came to Stephens' home to steal "the shit" (i.e., money or drugs); (5) Petitioner and Daniels both hit Stephens on the head; (6) Petitioner told Daniels to kill everyone; (7) he saw Daniels shoot Stephens, the first time, in the leg; (8) he saw Petitioner shoot Stephens in the head; (9) he saw Petitioner shoot Jerean Tidwell, grazing the back of his head; and (10) Petitioner and Daniels fled the scene. (Trial Tr., 2/25/02 at 15-16, 18-22, 28-35, 37-38, 51).

Aimee Kendrick testified as follows: (1) Petitioner or Daniels hit Stephens in the head; (2) she heard the gun shot when Stephens was shot in the leg, but she did not see who fired the shot; (3) Kendrick saw Petitioner shoot Stephens in the head; (4) Kendrick saw Petitioner shoot Jerean Tidwell, grazing the back of his head; (5) Petitioner and Daniels fled the scene; and (6) Kendrick called 911 ten to fifteen minutes after Petitioner and Daniels left the scene. (Trial Tr. 2/25/02 at 108-10, 113, 117-20).

Jerean Tidwell testified that: (1) he heard the gun shot when Stephens was shot in the leg, but he did not see who fired the shot; (2) Petitioner and Daniels were looking around for something to take; (3) he saw Petitioner and Daniels standing over Stephens with their guns drawn after he heard Stephens being shot a second time in the head; (4) he jumped up to run away but was also shot. The bullet grazed the back of his head; (5) he was able to escape and run to a nearby gas station where he called the police; and (6) he was taken to Pontiac Osteopathic Hospital, where he was treated. (Trial Tr.,

2/25/02 at 171, 175-78; Feb. 26, 2002 at 73-75, 81-82).

Kenya Campbell, Hayes' girlfriend, testified that: (1) she received a phone call at approximately 2:05 a.m. from Daniels requesting that she come pick up him and Petitioner from Petitioner's house; (2) she drove to the home where Petitioner came out of the house without Daniels; (3) Petitioner then got into the driver's seat and drove a street over to where Daniels was located; (4) Daniels looked "crazy," he was sweating, and she knew something was wrong; (5) Daniels told Campbell that Hayes was been beaten and that a friend of Hayes was also injured; (6) she became upset and told Petitioner and Daniels to get out of her car; (7) Petitioner then threatened to kill her if she said anything; and (8) they got out of her car and she drove away.  (Trial Tr., 2/25/02 at 299-300, 303-06, 311-12, 319-20).

After his convictions, Petitioner filed an appeal of right and raised the following claims:

> I.  Defendant was denied his Sixth Amendment right to effective assistance of counsel due to his trial attorney's failure to call witnesses to corroborate Boyles' testimony that he had left the house on Kenilworth by himself prior to the time the charge offenses were committed.

> II.  One of the convictions and sentences for first-degree murder must be vacated as Boyles' constitutional right not to twice be placed in jeopardy is violated by multiple convictions for the same homicide.

Petitioner then filed a *pro se* supplemental brief on appeal raising the following additional issues:

> [I.  Defendant was denied effective assistance of counsel.]

> > A.  Defendant was denied his Sixth Amendment right to effective assistance of counsel due to trial counsel's failing to properly meet with Defendant before trial to discuss and prepare for the case.

B.  Defendant was denied effective assistance of counsel due to trial counsel['s] failure to seek suppression of evidence of a photographic identification of the Defendant made without Defendant's counsel present.

C.  Defendant was denied effective assistance of counsel due to trial counsel's failure to request a mistrial premised on the prosecutor's improper method calculated to produce a wrongful conviction which resulted in violating Defendant's due process as well as his rights to a fair trial.

II.  Defendant was denied a fair trial by Prosecutor Hall['s] improper method of gaining a wrongful conviction.

III.  Defendant was denied his Fourteenth Amendment right to due process and his Fifth Amendment right to a fair trial due to insufficient evidence that was presented at trial to convict the Defendant.

IV.  Defendant was denied a fair and impartial jury trial due to the cumulative effect of the repeated instances of misconduct and constitutional errors.

The Michigan Court of Appeals vacated one felony-firearm conviction, affirmed the remainder of Petitioner's convictions, and remanded "to the circuit court for modification of his judgment of sentence to reflect a single conviction and sentence for first-degree murder supported by alternate theories of premeditated murder and felony murder and to reflect that a felony-firearm conviction has been vacated." *Boyles,* 2004 WL 2889882 at *6.  Petitioner filed an application for leave to appeal with the Michigan Supreme Court and raised the same issues as those presented before the Michigan Court of Appeals.  Petitioner's application for leave was denied in a standard order. *People v. Boyles,* 472 Mich. 943; 698 N.W.2d 400 (2004) (table).  Justices Cavanagh and Kelly, however, would have remanded this case to Oakland County Circuit Court for

a *Ginther*[10] hearing. Petitioner now seeks a writ of habeas corpus asserting the following claims:

I. Defendant was denied his Sixth Amendment right to effective assistance of counsel due to his trial attorney's failure to call witnesses to corroborate Boyles' testimony that he had left the house on Kenilworth by himself prior to the time the charge offenses were committed.

A.  Trial counsel, William [Mitchell], was ineffective as Defendant's trial counsel due for failing to properly meet with Defendant before trial to discuss and prepare for the case.

B.  Defendant, Terrill Deon Boyles, was denied effective assistance of counsel by trial counsel's failure to seek suppression of evidence of a photographic identification of the Defendant made without Defendant's counsel [present].

C.  Defendant, Terrill Deon Boyles, was denied effective assistance of counsel due to trial counsel's failure to request a mistrial premised on the prosecutor's improper method calculated to produce a wrongful conviction which resulted in violating Defendant's due process as well as his rights to a fair trial.

II.  Defendant, Terrill Deon Boyles, was denied a fair trial by Prosecutor Hall['s] improper method of gaining a wrongful conviction. *Berger v. United States,* 295 U.S. 78, 88; 55 S.Ct. 629 L.Ed 1314 (1983), which further served to violate and deny Defendant his right to a fair trial.

III.  Defendant, Terrill Deon Boyles, was denied his Fourteenth Amendment right to due process and his Fifth Amendment right to a fair trial due to insufficient evidence that was presented at trial to convict the Defendant.

[IV].  The cumulative effect of repeated instances of misconduct and constitutional errors denied Defendant a fair and impartial jury trial.

Respondent has filed an answer to the petition, asserting that Petitioner's first

two claims do not involve an objectively unreasonable application of clearly established

Supreme Court law; his third claim is procedurally defaulted; and his fourth claim is not

---

[10]*People v. Ginther,* 212 N.W.2d 922 (1973)

cognizable under habeas review.  Petitioner subsequently filed a reply brief.

## II.  STANDARD

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996
(AEDPA) Pub.L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), which govern this case,
"circumscribe[d]" the standard of review federal courts must apply when considering
applications for a writ of habeas corpus raising constitutional claims, including claims of
ineffective assistance of counsel.  *See Wiggins v. Smith,* 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for
habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> Court proceeding.

28 U.S.C. § 2254(d).  Therefore, federal courts are bound by a state court's adjudication
of a petitioner's claims unless the state court's decision was contrary to or involved an
unreasonable application of clearly established federal law.  *Franklin v. Francis,* 144
F.3d 429, 433 (6th Cir. 1998).  Mere error by the state court will not justify issuance of
the writ; the state court's application of federal law "must have been objectively
unreasonable."  *Wiggins,* 539 U.S. at 520-21 (quoting *Williams v. Taylor,* 529 U.S. 362,
409 (2000) (internal quotes omitted)).  Additionally, this court must presume the

correctness of state court factual determinations.  28 U.S.C. § 2254(e)(1) ("In a

proceeding instituted by an application for a writ of habeas corpus by a person in

custody pursuant to the judgment of a State court, a determination of a factual issue

made by a State court shall be presumed to be correct."); *see also West v. Seabold,* 73

F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state

court findings of historical fact unless they are clearly erroneous").

The Supreme Court explained the proper application of the "contrary to" clause:

A state-court decision will certainly be contrary to [the Supreme Court's]
clearly established precedent if the state court applies a rule that
contradicts the governing law set forth in our cases  . . .

A state-court decision will also be contrary to this Court's clearly
established precedent if the state court confronts a set of facts that are
materially indistinguishable from a decision of this court and nevertheless
arrives at a result different from [the Court's] precedent.

*Williams,* 529 U.S. at 405-06.

The Supreme Court held a federal court should analyze a claim for habeas

corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-

court decision unreasonably applies the law of this Court to the facts of a prisoner's

case."  *Id.* at 409.

[A] federal habeas court making the "unreasonable application" inquiry
should ask whether the state court's application of clearly established
federal law was objectively unreasonable . . .

[A]n *unreasonable* application of federal law is different from an *incorrect*
application of federal law . . .  Under § 2254(d)(1)'s "unreasonable
application" clause, then a federal habeas court may not issue the writ
simply because that court concludes in its independent judgment that the
relevant state-court decision applied clearly established federal law
erroneously or incorrectly .  Rather, that application must also be

unreasonable.

*Id.* at 409, 410-11; *see also Davis v. Coyle,* 475 F.3d 761, 766 (6th Cir. 2007); *King v. Bobby,* 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell,* 408 F.3d 823, 828-29 (6th Cir. 2005); *Rockwell v. Yukins,* 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

## III. DISCUSSION

### A. Ineffective Assistance of Counsel

#### 1. Alibi Witnesses

Petitioner claims that trial counsel was ineffective due to his failure to call Arthur Moore and Cleve Manley as alibi witnesses. Petitioner asserts that these individuals would have corroborated that Petitioner left Stephens' house before the robbery and shooting. The Michigan Court of Appeals did not find Petitioner's argument persuasive:

> After reviewing the trial record, we cannot conclude that Manley's testimony would have provided defendant a substantial defense that might have made a difference in the outcome of his trial, given that much trial testimony indicated that the robbery and shooting took place well before 2:05 or 2:10 a.m. on August 2, 2001 . . . In light of this testimony, the fact that defendant was at a Woodward stop light at 2:05 or 2:10 a.m. does not contradict the possibility that he previously was at 624 Kenilworth at the time of the robbery and shooting. Manley's affidavit thus does not create an alibi for defendant.

> *    *    *

> With respect to defendant's contention that trial counsel was ineffective for failing to call his cousin, Arthur Moore, as a witness, defendant offers on appeal absolutely no substantiation of his suggestion that Moore would have provided alibi testimony.

> *    *    *

> Defendant has failed to overcome the presumption that counsel pursued a reasonable trial strategy in suggesting to the jury that the prosecutor failed to call Moore because his testimony would have corroborated defendant's

own alibi testimony.

*Boyles,* 2004 WL 2889882 at *2, *3 (internal citations omitted).

To show that Petitioner was denied the effective assistance of counsel under federal constitutional standards, he must satisfy the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668 (1984)s.  First, he must show that counsel's performance was deficient.  This requires that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment.  *Strickland,* 466 U.S. at 687.  Second, the petitioner must establish that the deficient performance prejudiced the defense.  Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal.  *Id.*.

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance.  *Id.* at 690.  The reviewing court's scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.  *Id.* at 690.

To satisfy the prejudice prong under *Strickland,* a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" *Id.* at 694.  A reasonable probability is one that is sufficient to undermine confidence in the outcome.  *Id.*  "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result."  *McQueen v. Scroggy,* 99 F.3d

1302, 1311-12 (6th Cir. 1996). Under *Strickland,* a court must presume that decisions by counsel as to whether to call or question witnesses are matters of trial strategy. *See Hutchinson v. Bell,* 303 F.3d 720, 749 (6th Cir. 2002).

Here, Manley's post-trial, 2003 affidavit states that two years earlier he saw Petitioner for five minutes near downtown Pontiac "at the stop light on Woodward down the street from Krazy Moes" between 2:05 and 2:10 a.m. (Pet. at App. B). At trial, Kenneth Hayes testified that Petitioner arrived at Stephens' home shortly after 12:00 a.m. or 12:30 a.m. (Trial Tr. , 2/25/02 at 12- 15). Jerean Tidwell testified that Petitioner arrived between 11:00 p.m. and 11:30 p.m. (Trial Tr., 2/25/02 at 164-65). Accepting Hayes's and Tidwell's time frame, if only as an approximation, Manley's affidavit provides no alibi defense at all, even if it were thought to be reliable and true.

The testimony also demonstrates that Aimee Kendrick waited ten to fifteen minutes before calling 911; and 911 records show objectively that a call was received and a car dispatched at 2:15 a.m. (Tr., 2/25/02 at 120; Trial Tr., 2/26/08 at 25). Taking Kendrick's, Officer Michael Miller and Manley's statements together, Petitioner could have been at Stephens' home on Kenilworth, committed the offenses of which he has been convicted and still been seen by Manley between 2:05 a.m. and 2:10 a.m. a few miles away on Woodward in Pontiac. Manley's statement, not being necessarily inconsistent with other testimony, does not obviously support an alibi defense.

Moreover, Petitioner, testifying in his own behalf, stated that he left Stephens' home at 2:10 a.m. (Trial Tr., 2/26/02 at 159). Daniels, also testifying on his own behalf, stated that he saw Petitioner at Stephens' home between 2:05 a.m. and 2:10 a.m. (Trial Tr. , 2/26/02 at 186-88). Both Petitioner and Daniels contradict the purported alibi of

Manley that Petitioner was seen on Woodward "between the hour [sic] of 2:05 a.m. and 2:10 a.m.," the very time Petitioner claimed he was still at the house.

Additionally, Corey Brown and Kelli Lee testified that they arrived at Stephens' home at 1:45 a.m. or 1:50 a.m.; that Petitioner arrived about five minutes afterwards; and that Brown was inside of the house for ten to fifteen minutes while Lee remained in the car. (Trial Tr., 2/25/02, at 231-32, 279-81). After Brown's visit, he went back to the car, left Stephens' home between 2:00 a.m. and 2:10 a.m., had Lee drop him off at home, and she then drove herself home, arriving at her house at 2:17 a.m. (*Id.* at 238-39, 284, 292). This testimony appears to be more consistent with Manley's statement in support of an alibi. However, the court agrees with the Michigan Court of Appeals' finding on this issue:

> But even assuming that Manley's affidavit would have tended to support defendant's proffered alibi defense, we cannot conclude that the absence of Manley's testimony at trial deprived defendant of a *substantial* defense in light of the facts that (1) all three surviving victims identified defendant at trial as one of the assailants; (2) Brown's testimony, corroborated by Lee, established that just after he left Stephens' house, in which the victims all were present and unharmed, he saw defendant and another man entering the house; (3) defendant and Daniels acknowledged that they went into Stephens' house during the early morning hours of August 2, 2001; (4) Kenya Campbell testified that (a) Daniels called her shortly after 2:05 a.m. on August 2, 2001, and requested that she pick him up at defendant's house, which was located within a five-minute drive of Stephens' house, (b) on arriving at defendant's house, he came outside, entered the car, and told her to drive him to get Daniels, (c) at the next block, Daniels, who was sweating and appeared crazy, got inside the car, and (d) in response to Campbell's inquiry [about] what Daniels and defendant had done, Daniels replied that her "boyfriend [Hayes] had got whupped down, and his friend was hurt."

*Boyles,* 2004 WL 2889882 at *2.

The right of an accused to present a defense has long been recognized as " a

fundamental element of due process." *Washington v. State,* 388 U.S. 14, 19 (1967).

The United States Constitution guarantees to criminal defendants "a meaningful

opportunity to present a complete defense." *Varner v. Stovall,* 500 F.3d 491, 499 (6th

Cir. 2007). This right is not without limits, however, and may be reasonably restricted

"to accommodate other legitimate interests in the criminal trial process." *United States*

*v. Scheffer,* 523 U.S. 303, 308 (1998). However, the exclusion of evidence is

unconstitutional where it "infringe[s] upon a weighty interest of the accused." *Id.* "[T]he

exclusion of evidence in a criminal trial abridges an accused's right to present a defense

only where the exclusion is arbitrary or disproportionate to the purpose it is designed to

serve." *Forensic v. Birkett,* 501 F.3d 469, 475 (6th Cir. 2007).

Petitioner had the opportunity to demonstrate his theory of the case, actual

innocence, by testifying on his own behalf that he left Stephens' home before the

robbery and murder took place. (Trial Tr., 2/26/02, at 158-59). The jury also received

an alibi defense instruction. *Boyles,* 2004 WL 2889882 at *2, n. 3. Therefore, Petitioner

presented to the jury the very alibi defense he might have further demonstrated through

the testimony of Manley.

Based upon the overwhelming evidence and testimony against Petitioner, and

the fact that Petitioner's testimony actually conflicts in certain details with Manley's

affidavit, the degree to which Manley's hoped-for testimony would have been favorable

to Petitioner's case appears quite limited. Petitioner's counsel was not ineffective in

failing to call Manley where counsel was aware of his existence as a potential alibi

witness, knew exactly to what facts he would testify and how credible he would appear

as a witness. Counsel's decision to omit his testimony was within a reasonable range of

14

trial strategy. (Tr. 2/28/02, at 100-01; Pet. at 32); see *Cathron v. Jones* 77 F. App'x 835, 841-42 (6th Cir. 2003). For these reasons this claim presents no issue upon which habeas corpus relief may be granted.

With respect to Petitioner's ineffective assistance of counsel claim relative to his decision not to call Arthur Moore as an alibi witness, the Michigan Court of Appeals stated as follows:

> . . . [D]efendant offers on appeal absolutely no substantiation of his suggestion that Moore would have provided alibi testimony.
>
> * * *
>
> Defendant has failed to overcome the presumption that counsel pursued a reasonable trial strategy in suggesting to the jury that the prosecutor failed to call Moore because his testimony would have corroborated defendant's own alibi testimony.

*Boyles,* 2004 WL 2889882 at *3 (internal citations omitted). For the same reasons cited above, the court also does not find trial counsel to have been ineffective for failing to call Arthur Moore as an alibi witness. Habeas relief relative to this issue is not warranted.

## 2. Failure to Adequately Prepare for Trial

Petitioner claims that trial counsel's failure to meet with him until the day before trial and his failure to investigate witnesses resulted in a lack of preparation for trial and his ineffectiveness as Petitioner's defense counsel. The Michigan Court of Appeals rejected Petitioner's claim:

> Defendant fails to substantiate his claim that trial counsel neglected to investigate witnesses that defendant proposed or otherwise prepare for trial because he met with defendant only the day before trial began. Although defendant submitted an affidavit in support of this claim, the affidavit points to no specific witnesses or evidence that defense counsel allegedly failed to discover or proffer. Because defendant offers absolutely no suggestion of any specific evidence, witness, or theory that counsel failed to put forth at trial, he has not shown that counsel's conduct

15

in waiting to meet with him until the day before trial qualifies as objectively unreasonable. Similarly, because defendant entirely fails to contend with specificity that the allegedly inadequate trial preparation caused him prejudice, he has not demonstrated a reasonable probability that counsel's conduct affected the outcome of the trial.

*Boyles,* 2004 WL 2889882 at *3 (internal citations omitted).

The Michigan Court of Appeals' adjudication of Petitioner's claim was not an unreasonable application of clearly established federal law. Although Petitioner is clearly unhappy with the fact that trial counsel did not respond to three of his letters and did not comply with Petitioner's request to have multiple meetings prior to trial, he fails to state any specific facts supporting the ineffective assistance of counsel claim as required by Rule 2 of the Rules Governing Section 2254 Cases (i.e., specifying what effect additional communication with counsel and further trial preparation would have had on the outcome of the proceedings or what evidence should have been reviewed). Instead, Petitioner argues that his "inability to secure private communication with counsel prior to trial render[ed] him without representation at his trial [which is] in violation of the Sixth Amendment." (Pet. at 34). Under these facts, however, Petitioner has failed to provide the court with a sufficient basis upon which to bring an ineffective assistance of counsel claim regarding the issue of lack of preparation. Habeas relief is denied.

### 3.  Failure to Object to Photographic Identification Evidence

Petitioner asserts that his attorney was ineffective due to his failure to object to the admissibility of Kendrick's and Tidwell's photo array identification because at the time of the photo identification, Petitioner was not represented by counsel. The Michigan Court of Appeals addressed the issue as follows:

> In this case, because (1) defendant, who the police did not arrest until
> 6:00 p.m. on August 2, 2001, acknowledges that he was not in police
> custody at the time of the identification procedures in which Kendrick and
> Tidwell participated, (2) the police never contacted defendant before
> showing Kendrick and Tidwell the photographic lineups involving him and
> Daniels; (3) neither Kendrick nor Tidwell previously had identified
> defendant to the police; and (4) "[t]here is no evidence that the
> photographic lineup was conducted in an effort to build a case against
> defendant or to bolster the case against defendant as opposed to simply
> confirming who defendant was," we conclude that defendant possessed
> no right to counsel at the time of the precustodial photographic lineups.
> Consequently, trial counsel was not ineffective for failing to raise a
> meritless objection to evidence of the photographic lineups. *People v.
> Snider,* 239 Mich. App. 393, 425; 608 N.W.2d2d 502 (2000).

*Boyles,* 2004 WL 2889882 at *3.

The court agrees. In this case, it is irrelevant whether Petitioner was in custody at the time of the photographic line-up. Although the Sixth Amendment gives a criminal defendant the right to have counsel present at an in-person line-up after the initiation of criminal proceedings, there is no corresponding Sixth Amendment right to counsel during a photographic display. *Moore v. Illinois,* 434 U.S. 220, 227-28 (1977) (the Sixth Amendment does not guarantee an accused the right to counsel at photo arrays.);*United States v. Ash,* 413 U.S. 300, 321 (1973); *Mikel v. Thieret,* 887 F.2d 733, 737 (7th Cir. 1989). Petitioner had no federal constitutional right to counsel at the photographic array.[11] There would be no violation of federal law as determined by the U.S. Supreme Court because there is no federal law entitling Petitioner to the presence of counsel under these circumstances. Accordingly, Petitioner's ineffective assistance of

---

[11] It bears mention that Michigan law appears to be more restrictive in this regard. A Michigan suspect who is in custody is not to be identified by a photographic lineup *at all*, unless a legitimate reason for doing so exists. *People v. Kurylczyk,* 505 N.W.2d 528 (Mich. 1993) (citing *People v. Anderson,* 205 N.W.2d 461 (Mich. 1973), overruled in part on other grounds *People v. Hickman,* 684 N.W.2d 267 (Mich. 2004)).

counsel claim on the issue of identification does not form a basis for habeas relief.

### 4. Failure to Request a Mistrial Based Upon Prosecutorial Misconduct

During trial, the prosecutor and defense counsel "spent some time in the jury room reviewing the proposed instructions." *Boyles,* 2004 WL 2889882 at *4. Upon leaving the jury room, the prosecutor left behind a file which contained some of the proposed jury instructions. *Id.* "The first juror who arrived for duty on the fifth day of trial discovered the file and returned it to the circuit court clerk immediately thereafter." *Id.* Petitioner claims he received ineffective assistance of trial counsel due to his trial counsel's failure to move for a mistrial "on the basis that the prosecutor purposefully left prejudicial documentation concerning him in the jury room for the jurors to see." *Id.* For reasons set forth *infra*, the court finds that the prosecutor did not engage in misconduct. Trial counsel's failure to request a mistrial following Petitioner's perceived improper actions during trial would not constitute ineffective assistance of counsel. Habeas relief is denied on this claim.

### B. Prosecutorial Misconduct

Petitioner contends that the prosecutor engaged in misconduct by intentionally leaving proposed jury instructions in the jury room, resulting in Petitioner receiving an unfair trial. The Michigan Court of Appeals addressed this issue as follows:

> The court questioned the lone juror who discovered the file, and the juror explained that she saw a document in the file that bore defendant's name and listed "the charges that had been read to [the jury] in the opening statement," "realized that the [documents] were probably not supposed to be in there," and "picked them up and . . . found [the court clerk] and handed them to him." The juror denied examining the top document, or any pages below that document. The juror further denied discussing her

18

discovery of the documents with her fellow jurors. The court cautioned the juror "to disregard anything that you saw relative to those documents and only judge this case solely on the evidence presented in the courtroom and this Court's instructions on the law," and to refrain from discussing the file or the court's inquiries with the other jurors. All counsel expressed satisfaction with the extent of the trial court's inquiries and the fitness of the juror to continue service, and according to defense counsel, defendant also "indicated to [defense counsel] that he ha[d] no problems."

\* \* \*

Even assuming that defendant has not waived appellate review of this issue by affirmatively expressing satisfaction with the trial court's handling of the prosecutor's misplaced file, neither his arguments on appeal nor the affidavits he offers in support thereof identify any specific information to which a juror may have been exposed, or explain how any allegedly improper information prejudiced the outcome of his trial. Accordingly, defendant cannot establish the required prejudice element of an ineffective assistance of counsel claim. Defendant also cannot establish his related claim that the prosecutor engaged in misconduct, in this regard, that deprived him of a fair trial

*Boyles,* 2004 WL 2889882 at \*4 (internal citations omitted); see also (Trial Tr., 2/28/02

at 12-20).

The court agrees. "Claims of prosecutorial misconduct are reviewed deferentially

on habeas review." *Millender v. Adams,* 376 F.3d 520, 528 (6th Cir. 2004).

Prosecutorial misconduct will form the basis for habeas relief only if the conduct was so

egregious as to render the entire trial fundamentally unfair based on the totality of the

circumstances. *Donnelly v. DeChristoforo,* 416 U.S. 637, 643-45 (1974); *Caldwell v.*

*Russell,* 181 F.3d 731, 736 (6th Cir. 1999) (stating that "[p]rosecutorial misconduct may

warrant habeas relief only if the relevant misstatements were so egregious as to render

the entire trial fundamentally unfair to a degree tantamount to a due process

deprivation."), *abrogated on other grounds by Mackey v. Dutton,* 217 F.3d 399, 406 (6th

Cir. 2000). The determination whether the trial was fundamentally unfair is "made by

evaluating the totality of the circumstances surrounding each individual case." *Anger v. Overberg,* 682 F.2d 605, 608 (6th Cir. 1982). The court must focus on "the fairness of the trial, not the culpability of the prosecutor." *Pritchett v. Pitcher,* 117 F.3d 959, 964 (6th Cir. 1997) (quoting *Serra v. Michigan Department of Corrections* 4 F.3d 1348, 1355 (6th Cir. 1993)).

When assessing the prosecutor's conduct, the court must first ask whether the prosecutor's conduct or remarks were improper. *Slagle v. Bagley,* 457 F.3d 501, 515-16 (6th Cir. 2006). If they were, the court must decide whether the improper acts were so flagrant as to warrant relief. *Id.* at 516. The Sixth Circuit identified four factors to consider when analyzing conduct for flagrancy: "(1) whether the statements [or conduct] tended to mislead the jury or prejudice the defendant; (2) whether the statements [or conduct] were isolated or among a series of improper statements [or conduct]; (3) whether the statements [or conduct] were deliberately or accidentally before the jury; and (4) the total strength of the evidence against the accused." *Millender v. Adams,* 376 F.3d at 528 (quoting *Boyle v. Million,* 201 F.3d 711, 717 (6th Cir. 2000)).

Upon review of the circumstances giving rise to Petitioner's prosecutorial misconduct claim, the trial court's handling of the matter, the juror's responses to the court's questions and the fact that Petitioner has failed to demonstrate that the prosecutor's conduct was intentional, flagrant and resulted in a fundamentally unfair trial, the court finds that the appellate court did not unreasonably apply clearly established federal law as determined by the Supreme Court. Accordingly, habeas relief is denied relative to this claim.

## C. Insufficient Evidence & Procedural Default

Petitioner argues that there is insufficient evidence to establish that he committed and/or conspired to commit with Daniels the robbery and murder in this case. Furthermore, Petitioner states that there was insufficient evidence presented to establish his identity as one of the perpetrators of the crimes with which he has been convicted. The Michigan Court of Appeals concluded that there was sufficient evidence for a rational trier of fact to conclude that Petitioner was one of the assailants:

> We . . . conclude after reviewing the record that ample evidence of defendant's identity exists in the form of : (1) Hayes', Kendrick's, and Tidwell's unwavering identifications of defendant at trial as one of the gun-wielding participants in the robbery and shooting, whom they had the opportunity to observe in Stephens' house for at least several minutes over the course of the events; (2) defendant's and Daniels' acknowledgments that defendant was present at Stephens' house shortly before the time of the robbery and shooting, and (3) Campbell's account that Daniels directed her to defendant's house, where he entered her car and instructed her to pick up Daniels, who appeared sweaty and crazy, and who replied to Campbell's inquiry regarding what he and defendant had done by advising Campbell that Hayes had been "whupped down" and his friend had been hurt. *People v. Riley,* 463 Mich. 135, 139; 659 N.W.2d 611 (2003); *People v. Nowack,* 462 Mich. 392, 399-400; 614 N.W.2d 78 (2000). To the extent that defendant challenges the credibility of Hayes, Kendrick, and Tidwell, the jury had the opportunity to consider their testimony, as well as two defense counsels' extensive efforts to impeach them with prior inconsistent statements. The jury apparently accepted Hayes', Kendrick's, and Tidwell's identifications of defendant, and this Court will not second guess the jury's credibility determination. *Nowack, supra* at 400; *People v. Elkhoja,* 251 Mich. App. 417, 442; 651 N.W.2d 408 (2002) vacated in part on other grounds 467 Mich. 916 (2003).

*Boyles,* 2004 WL 2889882 at *5.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with

which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970).  However, the critical inquiry on review of the sufficiency of the evidence is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318 (1979).

This inquiry does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." *Id.*  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Id.* at 318-19 (internal citation and footnotes omitted) (emphasis in original).  This "standard must be applied with explicit references to the substantive elements of the criminal offense as defined by state law." *Id.* at n.16. "[N]ormally, pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the *Jackson* standard was contrary to or an unreasonable application of Supreme Court precedent." *Wolfe v. Bock,* 412 F.Supp.2d 657, 681 (E.D. Mich. 2006).

Petitioner is in procedural default relative to the insufficiency of evidence issue. The last state court to issue an opinion addressing Petitioner's insufficient evidence claim held:

> We need not address this issue because defendant failed to present it within his Standard 11 brief's statement of questions presented.  *People v. Miller,* 238 Mich. App. 168, 172; 604 N.W.2d 781 (1999).  We nonetheless conclude after reviewing the record that ample evidence of defendant's identity exists . . . .

*Id.*

Where "a state prisoner has defaulted his federal claims in state court pursuant

22

to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Though Petitioner's claim is procedurally defaulted, the procedural default doctrine is not jurisdictional. *Trest v. Cain*, 522 U.S. 87, 89 (1997); *Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005).

While the procedural default issue would ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits of [a claim or claims] if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated." *Barrett v. Acevedo*, 169 F.3d 1155, 1162 (8th Cir. 1999)(internal citations omitted); *see also Lambrix v. Singletary*, 520 U.S. 518, 524-25 (1997); *Forensic v. Birkett*, 451 F.Supp.2d 874, 887 (E.D. Mich. 2006). The court deems it more efficient in this case to proceed directly to the merits of Petitioner's claim.

Because a claim of insufficiency of the evidence presents a mixed question of law and fact, this court must determine whether the state court's application of the *Jackson* standard was reasonable. *Dell v. Straub*, 194 F.Supp.2d 629, 647 (E.D.Mich. 2002). Section 2254(d) "mandates that federal courts give deferential review to state court decisions on sufficiency of evidence claims." *David v. Lavinge*, 190 F.Supp.2d 974, 985 (E.D.Mich. 2002) (internal citations omitted). The habeas court does not substitute its own judgment for that of the finder of fact. *See Alder v. Burt,* 240 F.Supp.2d 651, 661-62 (E.D. Mich. 2003). In a federal habeas proceeding, the scope of review of the sufficiency of evidence in a state criminal prosecution "is extremely limited

23

and a habeas court must presume that the trier of fact resolved all conflicting inferences in the record in favor of the state and defer to that resolution." *Terry v. Bock*, 208 F.Supp.2d 780, 794 (E.D. Mich. 2002).

Under Michigan law, the elements of armed robbery are: (1) an assault, and (2) a felonious taking of property from the victim's presence or person, (3) while the defendant is armed with a weapon described in the statute. *See Lovely v. Jackson,* 337 F.Supp.2d 969, 977 (E.D. Mich. 2004) (citing Mich. Comp. Laws § 750.529; *People v. Allen,* 201 Mich. App. 98, 100; 505 N.W.2d 869 (1993)). Conspiracy to commit armed robbery is defined as: "[a]ny person who conspires together with one or more persons to commit an offense prohibited by law, or to commit a legal act in an illegal manner . . . " Mich. Comp. Laws § 750.157a.

Hayes testified that: (1) Petitioner and Daniels took a VCR and a couple of boxes from Stephens' home at gunpoint; (2) Petitioner and Daniels were at Stephens' home to steal "the shit;" and (3) his cash and cell phone were taken from his person at gunpoint.

Under Michigan law, first-degree premeditated murder is defined as a "[m]urder perpetrated by means of poison, lying in wait or any other willful, deliberate, and premeditated killing." Mich. Comp. Laws § 750.316(1)(a). First-degree felony murder is defined as a "[m]urder committed in the perpetration of, or attempt to perpetrate, arson, criminal sexual conduct in the first, second, or third degree, child abuse in the first degree, major controlled substance offense, robbery, carjacking, breaking and entering of a dwelling, home invasion in the first or second degree, larceny of any kind, extortion, kidnap[ ]ing, vulnerable adult abuse in the first and second degree under section 145n, torture under section 85, or aggravated stalking under section 411i." Mich. Comp. Laws

24

§ 750.316(1)(b).

Hayes and Kendrick testified that they actually witnessed Petitioner shoot Stephens in the head and that the shooting took place while Petitioner and Daniels were in the process of robbing Stephens and Hayes at gunpoint. Brown testified that Petitioner entered Stephens' home first and Daniels thereafter. Soon after Petitioner went outside to bring Daniels into the house the overt criminal activity began.

"A person who assaults another person with a gun, revolver, pistol, knife, iron bar, club, brass knuckles, or other dangerous weapon, without intending to commit murder or to inflict great bodily harm less than murder is guilty of [felonious assault]. Mich. Comp. Laws § 750.82. Assault with intent to commit murder is defined as "[a]ny person who [ ] assault[s] another with intent to commit the crime of murder . . ." Mich. Comp. Laws § 750.83. Hayes testified that: (1) he saw Daniels shoot Stephens in the leg; (2) he saw Petitioner and Daniels hit Stephens on the head; and (3) he saw Petitioner shoot and injure Tidwell. Campbell testified that Daniels admitted to her that Daniels and/or Petitioner beat Hayes at Stephens' home.

Committing a felony while in possession of a firearm is essentially self-defined, requiring only that "[a] person who carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony . . ." Mich. Comp. Laws § 750.227b. Kendrick, Hayes and Tidwell each testified that both Petitioner and Daniels were armed.

Finally, Petitioner asserts that there is insufficient evidence to establish his identity as the assailant in these crimes. Petitioner, in presenting his argument on this point argues that Hayes', Kendrick's, and Tidwell's initial statements to the police were

25

that they could not identify the assailants because they were wearing masks. (Trial Tr., 2/25/02, at 40-45, 120-27, 179-81). Petitioner, however, ignores the fact that these same individuals clearly, individually and unanimously identified him as participating in the robbery and murder in this case both in a photo array and in person at trial. These witnesses explained their "mask" statements at trial by saying that they were initially untruthful because they were afraid for their safety. *Id.*

Given the testimony adduced at trial, the court finds that the Michigan Court of Appeals' decision to reject Petitioner's insufficiency of evidence argument was not an unreasonable application of law. To the extent that Petitioner challenges the inferences that the jury drew from the testimony presented at trial and the weight to be accorded certain pieces of evidence, he is not entitled to relief. *Walker v. Engle,* 703 F.2d 959, 969-70 (6th Cir. 1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992). A habeas court must defer to the factfinder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys,* 319 F.3d 780, 788-89 (6th Cir. 2003). "The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim." *Id.*

A rational jury could well choose to credit Hayes', Kendrick's, Tidwell's, and Campbell's testimony and to discount or reject outright Petitioner's and Daniels' version of events. The court on habeas review must in such cases defer to the jury's finding, made beyond a reasonable doubt, that the more credible witnesses supported the prosecution's charges. See *Matthews,* 319 F.3d at 788-89. Petitioner's claim that his conviction was not supported by constitutionally sufficient evidence is without merit and

26

habeas relief is not warranted.

## D.  Cumulative Error

Petitioner claims he is entitled to habeas relief because of the cumulative effect of the alleged errors in the state courts.  Because Petitioner's individual claims lack merit, he cannot establish that habeas relief is warranted based upon a claim of cumulative error.  *See Gillard v. Mitchell,* 445 F.3d 883, 898 (6th Cir. 2006).  Also, the Sixth Circuit noted that the Supreme Court "has not held that distinct constitutional claims can be cumulated to grant habeas relief."  *Lorraine v. Coyle,* 291 F.3d 416, 447 (6th Cir. 2002). Petitioner's claim is therefore denied.

## E.  Certificate of Appealability

A district court, in its discretion, may decide whether to issue a certificate of appealability ("COA") at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination.  *Castro v. United States,* 310 F.3d 900, 903 (6th Cir. 2002).  In deciding to deny the habeas petition, the court has, of course, studied the case record and the relevant law, and concludes that it is presently in the best position to decide whether to issue a COA. *See Id.* at 90 (quoting *Lyons v. Ohio Adult Parole Auth.,* 105 F.3d 1063, 1072 (6th Cir. 1997) ("[Because] 'a district judge who has just denied a habeas petition . . .  will have an intimate knowledge of both the record and the relevant law,' the district judge is, at that point, often best able to determine whether to issue the COA.").

A COA may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  A petitioner must "show [ ] that reasonable jurists could debate whether (or, for that matter, agree that) the petition

should have been resolved in a different manner or that the issues presented were "adequate to deserve encouragement to proceed further'" *Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (citation omitted).  In this case, the court concludes that reasonable jurists would not debate the court's conclusion that the petition does not present any claims upon which habeas relief may be granted. Therefore, the court denies a certificate of appealability.

### IV.  CONCLUSION

Petitioner has not established that he is in the State of Michigan custody in violation of the Constitution or laws of the United States.  Accordingly,

IT IS ORDERED that the "Petitioner for Writ of Habeas Corpus" [Dkt. #1] is DENIED.

IT IS FURTHER ORDERED that a certificate of appealability is also DENIED.


s/Robert H. Cleland
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  October 31, 2008

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, October 31, 2008, by electronic and/or ordinary mail.


s/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522